**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| ASHAN KHAN | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:18-cv-44 |
| | ) | |
| ABM INDUSTRIES INCORPORATED, | ) | |
|  et al. | ) | |
|     Defendant. | ) | |

**ORDER**

The threshold issue in this employment discrimination action is whether this matter should be stayed and referred to arbitration in accordance with an arbitration agreement signed by plaintiff. For the reasons that follow, defendant's motion to stay this matter and compel arbitration must be granted.

**I.**

Plaintiff, Ashan Khan, is a 67 year-old resident of Ashburn, Virginia and is of Pakistani national origin. Defendant, Five Star U Street Metropolitan Airport Parking, LLC (Five Star), employed plaintiff at Dulles International Airport. Defendants U Street Parking, Inc., ABM Industries Incorporated, and ABM Parking Services, Inc. are affiliates of defendant Five Star.

From October 1, 2015 through March 28, 2016, plaintiff worked for Five Star as a manager of shuttle operations at Dulles International Airport. On January 14, 2016, plaintiff entered into an Arbitration Agreement with defendants by selecting "I Agree" in response to the following statement:

> **BY SELECTING "I AGREE", I KNOWINGLY AND VOLUNTARILY WAIVE FOR ANY COVERED CLAIM THE RIGHT TO CLASS, REPRESENTATIVE, AND COLLECTIVE PROCEDURES AND THE RIGHT TO TRIAL BY JURY OR JUDGE, TO THE FULL EXTENT**

**PERMITTED BY APPLICABLE LAW. I RETAIN ALL OTHER RIGHTS, INCLUDING MY RIGHT TO COUNSEL, TO CALL AND CROSSEXAMINE WITNESSES, AND TO HAVE MY CLAIMS ADDRESSED BY AN IMPARTIAL FACT FINDER. I ACKNOWLEDGE THAT I AM HEREBY ADVISED TO SEEK LEGAL ADVICE AS TO MY RIGHTS AND RESPONSIBILITIES UNDER THIS AGREEMENT AND HAVE AVAILED MYSELF OF THE ADVICE OF COUNSEL TO THE EXTENT I WISH TO DO SO.**
**I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, AND THAT I UNDERSTAND ITS TERMS.**
\*\*\*\*
I have carefully read and understand the ABM Mutual Arbitration Agreement dated December 2015 and I agree to abide by its terms.
I Agree.

The Arbitration Agreement goes on to provide that plaintiff and defendants "desire to resolve fairly and quickly, any and all disputes between the parties . . . including . . . those arising from and/or relating in any way to any aspect of . . . my employment and/or the severance of my employment." Arbitration Agreement at 1. As such, the Arbitration Agreement provides that "[f]inal and binding arbitration before a single, neutral arbitrator shall be the exclusive remedy for any "Covered Claim[.]" *Id.* Covered Claims include:

> any claim (except a claim that by law is nonarbitrable) that arises between me and the Company, its past, present, and future: parent(s), subsidiaries, affiliates, and/or their respective past, present, and future: officers, directors and/or employees, including but not limited to claims arising and/or relating in any way to my hiring, my employment with, and/or the severance of my employment with, the Company. . . Covered Claims include, but are not limited to, any claim . . . **for discrimination, harassment**, or unlawful retaliation, . . . or any applicable similar laws, to the full extent permitted by applicable law.

Arbitration Agreement at 1 (emphasis added).

The Arbitration Agreement further provides that arbitration will occur in the county in which plaintiff resides at the time the claim is filed, and that arbitration will be conducted pursuant to the AAA Employment Arbitration Rules and Mediation Procedures (the "AAA Rules"). The Arbitration Agreement also provides that defendants will pay the initial filing fee associated with filing the demand for arbitration, as well as any other fees and costs due to the

AAA and the arbitrator, and also sets forth various procedures relating to the arbitration process (i.e., the arbitrator must be a former judge or licensed attorney; application of the Federal Rules of Evidence during any hearing; and application of the Federal Rules of Civil Procedure during discovery). *Id*. at 2. Moreover, the Arbitration Agreement provides that it is governed by and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1-16 ("FAA").

On January 11, 2018, plaintiff filed a complaint against defendants, alleging:

Count I: Title VII race and national origin discrimination, and

Count II: Section 1981 Race Discrimination

Both of these counts arise out of plaintiff's employment with defendant Five Star.

## II.

The starting point for analysis of defendants' motion is the FAA, which establishes a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Specifically, Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Accordingly, the Fourth Circuit has observed that "[w]hen parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002). Further, it is well-settled that the FAA's requirements "apply to employment agreements to arbitrate discrimination claims brought pursuant to federal statutes, including Title VII of the Civil Rights Act." *Id.* (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001).

In deciding whether the FAA requires a court to compel arbitration and stay judicial proceedings, courts conduct a three-step inquiry. *See Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 90 (2000). First, courts "ask whether the parties agreed to submit their claims to arbitration." *Id.* If so, then it is necessary to determine "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* (citing *Gilmer*, 500 U.S. at 26). Assuming Congress has not evinced such an intention, courts next determine whether " 'the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.' " *Id.* (quoting Gilmer, 500 U.S. at 28). Here, in light of the well-settled fact that Congress has not evinced an intention to preclude a waiver of judicial remedies for Title VII and § 1981 disputes, it is only necessary to address the first and third steps of the inquiry. *See Murray*, 289 F.3d at 302.

First, it is clear that the parties agreed to submit their claims to arbitration. Specifically, the Arbitration Agreement provides for arbitration of "any claim . . . that arises between me and the Company[,]" and expressly refers to claims of discrimination and harassment as included within the parties' agreement to arbitrate. Arbitration Agreement at 1. Similar clauses without references to specific statutes or types of claims have been held to show a broad agreement to arbitrate all employment-related disputes. *See, e.g.*, *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 380-81 (4th Cir. 2008) (clause providing for arbitration of claims "related to employment" compelled arbitration of plaintiff's False Claims Act claims).

Given that the parties clearly agreed to arbitrate plaintiff's claims, the sole remaining question is whether plaintiff may effectively vindicate his rights in the arbitral forum. The Fourth Circuit has explained that "whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation" is a "case-by-case analysis that focuses . . . upon the

claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001) (citing *Williams v. Cigna Fin. Advisors, Inc.*, 197 F.3d 752, 764 (5th Cir. 1999)). In this case, the Arbitration Agreement requires *defendant*, not plaintiff, to pay for any arbitration filing fee, and the arbitrator's fees in accordance with the AAA Rules. *See* Arbitration Agreement at 2. Plaintiff has presented no evidence or argument that arbitration would be prohibitively expensive, and in light of the plain terms of the Arbitration Agreement, could not do so. Accordingly, the Arbitration Agreement is enforceable, and plaintiff is required to arbitrate his dispute with defendants.

Accordingly, for the reasons stated above, and for good cause shown,

It is hereby **ORDERED** that defendants' motion to stay and compel arbitration is **GRANTED** (Doc. 18).

It is further **ORDERED** that this matter is **STAYED** pending the arbitration of plaintiff's claims pursuant to the parties' Arbitration Agreement and further Order of this Court.

It is further **ORDERED** that promptly upon resolution of the arbitration of plaintiff's claims, the parties are **DIRECTED** to file a pleading notifying the Court that the arbitration proceedings have been resolved.

The Clerk is directed to send a copy of this Order to all counsel of record, and the *pro se* plaintiff, and to administratively close the case and place this matter among the inactive causes.

Alexandria, Virginia
June 8, 2018

/s/
T. S. Ellis, III
United States District Judge

5